## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

MORIBA BA, DONALD CHIPP,
SHERRICA CHIPP, SHAWN HUNT,
EUGENE MURANO and YOLANDA
WIGGINS, individually and on behalf of all
others similarly situated,

    *Plaintiffs,*

  v.

HSBC USA, INC., HSBC BANK USA, N.A.,
HSBC MORTGAGE CORPORATION,
HSBC REINSURANCE (USA) INC.,
UNITED GUARANTY RESIDENTIAL
INSURANCE CO., GENWORTH
MORTGAGE INSURANCE CO.,
REPUBLIC MORTGAGE INSURANCE CO.,
MORTGAGE GUARANTY INSURANCE
CORP. and RADIAN GUARANTY INC.,

    *Defendants.*

     Civil Action No: 2:13-cv-00072-PSD
     (Judge Paul S. Diamond)

---

## PROPOSED ORDER

---

AND NOW, this _____ day of _____, 2013, upon

consideration of Defendant United Guaranty Residential Insurance Co.'s ("United Guaranty")

Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and

accompanying Memorandum of Law, it is hereby ORDERED that said Motion is GRANTED.

Plaintiffs' complaint is hereby DISMISSED with prejudice as to United Guaranty.


       The Honorable Paul S. Diamond
       United States District Judge

## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

MORIBA BA, DONALD CHIPP,
SHERRICA CHIPP, SHAWN HUNT,
EUGENE MURANO and YOLANDA
WIGGINS, individually and on behalf of all
others similarly situated,

       *Plaintiffs,*

       v.

HSBC USA, INC., HSBC BANK USA, N.A.,
HSBC MORTGAGE CORPORATION,
HSBC REINSURANCE (USA) INC.,
UNITED GUARANTY RESIDENTIAL
INSURANCE CO., GENWORTH
MORTGAGE INSURANCE CO.,
REPUBLIC MORTGAGE INSURANCE CO.,
MORTGAGE GUARANTY INSURANCE
CORP. and RADIAN GUARANTY INC.,

       *Defendants.*

Civil Action No:  2:13-cv-00072-PSD

**DEFENDANT UNITED GUARANTY
RESIDENTIAL INSURANCE
COMPANY'S MOTION TO DISMISS
COMPLAINT COMPANY PURSUANT
TO FEDERAL RULES OF CIVIL
PROCEDURE 12(B)(1) AND 12(B)(6)**

Defendant United Guaranty Residential Insurance Co. ("Defendant") hereby moves to

dismiss all claims asserted against it pursuant to Federal Rules of Civil Procedure 12(b)(1) and

12(b)(6).  In support of this motion, Defendant submits the accompanying Memorandum of Law,

which is incorporated by reference herein.

Dated:  February 26, 2013

       Respectfully submitted,

       **White & Williams LLP**

       BY:    /s/ David E. Edwards
            David E. Edwards (PA 67961)
            1650 Market Street
            1800 One Liberty Place
            Philadelphia, PA 19103
            (215) 864-7166

*Of Counsel*:

Michael B. Carlinsky (*pro hac vice* pending)
Jane M. Byrne (*pro hac vice* pending)
**Quinn Emanuel Urquhart & Sullivan LLP**
51 Madison Avenue, 22nd Floor
New York, New York 10010

*Attorneys for United Guaranty Residential
Insurance Company*

# IN THE UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| MORIBA BA, DONALD CHIPP, SHERRICA CHIPP, SHAWN HUNT, EUGENE MURANO and YOLANDA WIGGINS, individually and on behalf of all others similarly situated, | : : : : : | |
| *Plaintiffs,* | : : | |
| v. | : : | Civil Action No:  2:13-cv-00072-PD |
| HSBC USA, INC., HSBC BANK USA, N.A., HSBC MORTGAGE CORPORATION, HSBC REINSURANCE (USA) INC., UNITED GUARANTY RESIDENTIAL INSURANCE CO., GENWORTH MORTGAGE INSURANCE CO., REPUBLIC MORTGAGE INSURANCE CO., MORTGAGE GUARANTY INSURANCE CORP. and RADIAN GUARANTY INC., | : : : : : : : : : : | **DEFENDANT UNITED GUARANTY RESIDENTIAL INSURANCE COMPANY'S MOTION TO DISMISS COMPLAINT** |
| *Defendants* | : | |

## TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................1

RELEVANT BACKGROUND ...............................................................................2

ARGUMENT .........................................................................................................6

I.     PLAINTIFFS' RESPA CLAIMS ARE UNTIMELY...................................6

II.    PLAINTIFFS DO NOT ALLEGE FACTS SUFFICIENT TO SUPPORT
EQUITABLE TOLLING OF THE STATUTE OF LIMITATIONS .................7

      A.    Plaintiffs Fail To Plead Facts Showing That United Guaranty Actively
Misled Them ...................................................................................8

      B.    Plaintiffs Fail To Allege Facts Showing That United Guaranty Prevented
Them From Recognizing Their Claims .............................................11

      C.    Plaintiffs Fail To Allege Facts Showing That They Exercised Reasonable
Diligence Throughout The Limitations Period ....................................13

III.   THE NON-INSURED PLAINTIFFS LACK STANDING TO BRING THEIR
RESPA CLAIMS AGAINST UNITED GUARANTY ...............................15

      A.    The Non-Insured Plaintiffs Lack Article III Standing To Sue United
Guaranty for RESPA Violations........................................................15

      B.    The Non-Insured Plaintiffs Do Not Allege That United Guaranty Caused
Them Any Direct Injury....................................................................16

      C.    The Non-Insured Plaintiffs' Conspiracy Allegations Are Insufficient To
Confer Article III Standing Over United Guaranty .............................17

      D.    The Non-Insured Plaintiffs' RESPA Claims Fail For Lack of Statutory
Standing .........................................................................................19

IV.   PLAINTIFFS' UNJUST ENRICHMENT CLAIMS FAIL...........................21

V.    PLAINTIFFS SHOULD NOT BE GIVEN LEAVE TO AMEND ..................21

CONCLUSION.....................................................................................................23

# TABLE OF AUTHORITIES

**Page**

## Cases

*Adderly v. Ferrier*,
2010 WL 2640596 (W.D. Pa. June 2, 2010)...........................................................13

*Aguilar v. Allstate Fire & Cas. Ins. Co.*,
2007 WL 734809 (E.D. La. Mar. 6, 2007) .......................................................16, 17

*Allen v. Wright*,
468 U.S. 737 (1984)......................................................................................15

*Andrews v. Metro N. Commuter R. Co.*,
882 F.2d 705 (2d Cir. 1989)..............................................................................18

*Baldwin v. Univ. of Pittsburgh Med. Ctr.*,
636 F.3d 69 (3d Cir. 2011)................................................................................19

*Cetel v. Kirwan Fin. Grp., Inc.*,
460 F.3d 494 (3d Cir. 2006)...............................................................................7

*Common Cause of Pennsylvania v. Pennsylvania*,
558 F.3d 249 (3d Cir. 2009)..............................................................................15

*In re Community Bank of N. Virginia*,
467 F. Supp. 2d 466 (W.D. Pa. 2006)...............................................................9, 10

*Dickson v. Microsoft Corp.*,
309 F.3d 193 (4th Cir. 2002) ............................................................................19

*Forbes v. Eagleson*,
228 F.3d 471 (3d Cir. 2000)..........................................................................11, 13

*Grand Union Supermarkets of the Virgin Islands, Inc. v. Lockhart Realty Inc.*,
2012 WL 3328836 (3d Cir. Aug. 15, 2012)...........................................................21

*Hansen v. Shearson/Am. Exp., Inc.*,
890 F. Supp. 416 (E.D. Pa. 1995) .......................................................................7

*Hovenkotter v. Safeco Corp.*,
2009 WL 6698629 (W.D. Wash. Aug. 3, 2009) ......................................................16

*I.V. Svs. of America, Inc. v. Inn Devp't & Mgmt., Inc.*,
182 F.3d 51 (1st Cir. 1999)...........................................................................8, 14

*In re Ins. Brokerage Antitrust Lit.*,
618 F.3d 300 (3d Cir. 2010)..........................................................................18, 19

*Inst'l Investors Grp. v. Avaya, Inc.*,
564 F.3d 242 (3d Cir. 2009)...............................................................................7

*Johnson v. Geico Cas. Co.,*
    673 F. Supp. 2d 244 (D. Del. 2009) ...........................................................16, 17

*Kamara v. Columbia Home Loans, LLC,*
    654 F. Supp. 2d 259 (E.D. Pa. 2009) ...................................................................6

*Kester v. Zimmer Holdings, Inc.,*
    2010 WL 2696467 (W.D. Pa. June 16, 2010) ...................................................7, 9

*Lee v. Am. Nat. Ins. Co.,*
    260 F.3d 997 (9th Cir. 2001) .............................................................................16

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) .....................................................................................15, 16

*McCarn v. HSBC USA, Inc.,*
    2012 WL 7018363 (E.D. Cal. May 29, 2012) ............................................. passim

*McCarn v. HSBC USA, Inc., et al.,*
    2012 WL 5499433 (E.D. Cal. Nov. 13, 2012) ............................................. passim

*Mest v. Cabot Corp.,*
    449 F.3d 502 (3d Cir. 2006) ..............................................................................10

*Morilus v. Countrywide Home Loans, Inc.,*
    651 F. Supp. 2d 292 (E.D. Pa. 2008) ...................................................................6

*Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.,*
    998 F.2d 1192 (3d Cir. 1993) ............................................................................18

*Perez v. State Farm Mut. Auto. Ins. Co.,*
    2011 WL 5833636 (N.D. Cal. Nov. 15, 2011) ...................................................16

*Poskin v. TD Banknorth, N.A.,*
    687 F. Supp. 2d 530 (W.D. Pa. 2009) ........................................................8, 10, 13

*In re Processed Egg Products Antitrust Litig.,*
    2011 WL 5980001 (E.D. Pa. Nov. 30, 2011) .....................................................13

*In re Processed Egg Prods. Antitrust Litig.,*
    2012 WL 6645533 (E.D. Pa. Dec. 20, 2012) ...................................................7, 11

*Sprint Commc'ns Co. v. APCC Servs., Inc.,*
    554 U.S. 269 (2008) ..........................................................................................15

*Synesiou v. DesignToMarket, Inc.,*
    2002 WL 501494 (E.D. Pa. Apr. 3, 2002) .........................................................21

*United States v. Kelly,*
    2012 WL 425969 (W.D. Pa. Feb. 9, 2012) ........................................................17

*Wilson v. Kerestes,*
    2012 WL 3626706 (M.D. Pa. June 12, 2012) ....................................................13

## Statutes

12 U.S.C. § 2607..................................................................................................6

12 U.S.C. § 2607(a)........................................................................................19, 20

12 U.S.C. § 2607(b)...............................................................................................20

12 U.S.C. § 2607(d)(2)..........................................................................................20

42 Pa.C.S.A. § 5525(4)..........................................................................................21

Fed. R. Civ. P. 9(b)..................................................................................................7

Fed. R. Civ. P. 12(b)(1).......................................................................................1, 15

Fed. R. Civ. P. 12 (b)(6) ........................................................................................19

## Introduction

Plaintiffs Moriba Ba, Donald and Sherrica Chipp, Shawn Hunt, Eugene Murano and Yolanda Wiggins (collectively, "Plaintiffs") have filed a putative class action lawsuit against nine defendants, including United Guaranty Residential Insurance Co. ("United Guaranty"). Plaintiffs seek to assert claims for violation of the Real Estate Settlement Procedures Act ("RESPA") and unjust enrichment based on United Guaranty's alleged involvement in a so-called "kickback scheme" relating to the mortgage insurance Plaintiffs procured for their various residences. United Guaranty now moves to dismiss the complaint with prejudice under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on the grounds that Plaintiffs' claims are barred by the statute of limitations and fail for lack of Article III and statutory standing.

Plaintiffs' complaint is one of at least 10 putative class action complaints filed by Plaintiffs' counsel nationwide, including three others in this judicial district, on behalf of similarly-situated plaintiffs against various lenders and insurers, raising identical RESPA and unjust enrichment claims. The defendants have moved to dismiss each case on identical grounds. The first such motion to be resolved was granted in November 2012 in the Eastern District of California. *McCarn v. HSBC USA, Inc., et al.*, 2012 WL 5499433 (E.D. Cal. Nov. 13, 2012) ("*McCarn II*"). The *McCarn* court dismissed the plaintiff's claims with prejudice against those defendants who did not provide insurance to the plaintiff on the grounds that the plaintiff lacked Article III standing to sue those defendants. *Id.* at 3-4. The court also dismissed the plaintiff's claims without prejudice against all other defendants on the grounds that the claims were untimely under RESPA and the plaintiff had not pleaded facts sufficient to support equitable tolling. *Id.* at 4-9. Rather than appeal from those dismissals or avail himself of an opportunity to amend his complaint to try to state valid claims, the *McCarn* plaintiff voluntarily dismissed his complaint instead. Weeks later, a nominally different group of plaintiffs, not including plaintiff McCarn, filed this lawsuit, raising the same untimely claims against the same defendants, and asserting the same allegations of equitable tolling and standing that had been rejected in *McCarn*. Thus, this case is simply a recycled version of the failed *McCarn* case.

As a result of Plaintiffs' counsel's forum-shopping, United Guaranty, and the other defendants herein, are now required to raise the very same arguments they raised months ago, successfully, in *McCarn*, to obtain the dismissal of an identical complaint. There is simply no reason why this Court should not reach the same result the *McCarn* court reached after the parties had a full and fair opportunity to litigate their arguments through multiple rounds of briefing. Rather, just as in *McCarn*, Plaintiffs' claims fail because (i) they are untimely on their face – they were each raised years after the expiration of the one-year statute of limitations under RESPA and Plaintiffs have not alleged sufficient facts to support equitable tolling through fraudulent concealment – and (ii) Plaintiffs lack standing, under both Article III and RESPA, to assert claims against those defendants, including United Guaranty as to four of the six plaintiffs, who did not insure their loans, and thus did not cause or contribute to any of their alleged injuries under RESPA. This motion to dismiss should therefore be granted in full.

Moreover, Plaintiffs' complaint should be dismissed *without* leave to amend. The defects in Plaintiffs' claims, including that Plaintiffs never obtained insurance from United Guaranty and they engaged in no "diligence" at all to attempt to discover their claims during the limitations period, are not remedial through amendment. Plaintiffs' counsel's failure to even try to amend the *McCarn* complaint, and their decision to re-file the same case in this forum instead, confirm that Plaintiffs have no additional allegations they could make to state valid and timely claims. Rather, Plaintiffs' counsel are simply shopping for a court that will entertain their clients' time-barred claims, based on the same allegations of tolling and standing that the *McCarn* court rejected just a few months ago. Accordingly, dismissing Plaintiffs' complaint with prejudice would serve the interests of judicial economy by preventing the defendants from having to file yet another identical motion to dismiss and by putting an end to Plaintiffs' counsel's seriatim attempts to raise the same untimely and unviable claims.

### Relevant Background

**Plaintiffs' Allegations**. On January 4, 2013, Plaintiffs filed this case against nine defendants, including United Guaranty, asserting claims for violation of RESPA and "common-

law restitution/unjust enrichment." Plaintiffs allege they are home owners who obtained home-mortgage loans from defendant HSBC USA, Inc. ("HSBC") between January 2006 and April 2008.  Complaint, ¶¶ 14-18.  Plaintiffs allege that HSBC bought mortgage insurance on their respective home loans from various mortgage insurers and further required the mortgage insurers to obtain "reinsurance" from its affiliated "captive" reinsurer, HSBC RE.  Plaintiffs allege further that this "scheme" whereby the mortgage insurers received a "steady stream of business" from the lenders in exchange for their agreements to cede "a portion of the premiums" they received from Plaintiffs to the lenders' captive reinsurers was an unlawful "kickback" under RESPA, 12 U.S.C. §§ 2601, *et seq*.  *See* Complaint, ¶¶ 1-13, 52.  Plaintiffs allege these reinsurance transactions violated their right under RESPA sections 2607(a) and (b) "to a real estate settlement free from unlawful kickbacks and unearned fees."  Complaint, ¶ 172.

The vast majority of Plaintiffs' RESPA allegations have nothing to do with the specific conduct of the named defendants as it relates to Plaintiffs, but instead purport to explain the history of mortgage reinsurance practices generally by referencing news articles and other publicly-available information.  *See, e.g.*, Complaint, Exs. 6-12, 14-16, 24-25.  Plaintiffs do not allege anything at all specific to United Guaranty, including that United Guaranty did anything that caused them harm.  It is also undisputed that United Guaranty did not insure the home loans obtained by plaintiffs Ba, the Chipps and Murano (the "Non-Insured Plaintiffs"), as those plaintiffs allege that their loans were insured by defendants Republic Mortgage Insurance Co., Mortgage Guaranty Insurance Corp, and Genworth Mortgage Insurance Corp, respectively.  *See* Complaint, ¶¶ 14-16, 18.

In recognition that their claims are time-barred, Plaintiffs devote a full 39 paragraphs of their complaint to arguing why their claims are timely notwithstanding that they were raised several years after their respective loan closings, and thus several years after the expiration of RESPA's one-year statute of limitations.  *See* Complaint, ¶¶ 112-150.  Again, nowhere in this lengthy discussion do Plaintiffs identify anything specific that United Guaranty allegedly did, or did not do, that supports the tolling of the statute of limitations.

**Plaintiffs' Counsel's Related RESPA Cases.**  This case is one of ten virtually identical putative class action complaints filed by Plaintiffs' counsel since December 2011 on behalf of similarly situated groups of plaintiffs against similar groups of lenders and insurers.[1]  The defendants have moved to dismiss each case on the grounds that the plaintiffs' claims are barred by the statute of limitations and because those plaintiffs whose loans were not insured by the defendants lack Article III and statutory standing under RESPA to sue the non-insuring defendants.

The only one of Plaintiffs' counsel's pending RESPA cases to be resolved thus far is *McCarn v. HSBC*, filed in the Eastern District of California on March 12, 2012.  Other than with respect to the identities of the named plaintiffs, the allegations in *McCarn* are virtually identical to the allegations Plaintiffs raise herein:

- Both actions were brought on behalf of the named plaintiffs and other similarly situated persons "who obtained residential mortgage loans originated, funded and/or originated through correspondent lending by [the defendants] . . . between January 1, 2004 and the present [] and who, in connection therewith, purchased [] private mortgage insurance that was reinsured with HSBC's captive reinsurance affiliate . . . ." *Compare* Complaint, ¶ 1, with *McCarn* First Amended Complaint ("*McCarn* FAC") (attached as Exhibit A), ¶ 2.[2]

- In both suits, the plaintiffs allege that the defendants, including the plaintiffs' lender HSBC and its alleged "captive reinsurer" HSBC RE, and various residential mortgage insurance companies, including United Guaranty, engaged in a "scheme" whereby the

---

[1]  The other cases are:  *Samp v. JPMorgan Chase Bank N.A.*, 5:11-cv-01950 (C.D. Cal. filed Dec. 9, 2011); *White v. PNC Financial Services Group, Inc.*, 2:11-cv-07928 (E.D. Pa. filed Dec. 31, 2011); *Menichino v. Citibank, N.A.*, 2:12-cv-00058 (W.D. Pa. filed Jan. 13, 2012); *McCarn v. HSBC*, 1:12-cv-00375 (E.D. Cal. filed March 12, 2012); *Manners v. Fifth Third Bank*, 2:12-cv-00442 (W.D. Pa. filed April 4, 2012); *Riddle v. Bank of America Corp.*, 2:12-cv-01740 (E.D. Pa. filed April 5, 2012); *Barlee v. First Horizon National Corp.*, 2:12-cv-03045 (E.D. Pa. filed May 31, 2012); *Cunningham v. M&T Bank Corp.*, 1:12-cv-01238 (M.D. Pa. filed June 28, 2012); *Orange v. Wachovia Bank, NA*, 5:2012-cv-01683 (C.D. Cal. filed Oct. 3, 2012).

[2]  In accordance with Local Rule 5.12, United Guaranty will submit Exhibit A in paper form, as it exceeds 50 pages in length.

4

mortgage insurers agreed to "cede" to HSBC RE "a significant portion of the mortgage insurance premiums they received from HSBC's borrowers in return for HSBC's referral of private mortgage insurance business," in violation of RESPA's "strict prohibition against kickbacks, referral payments and unearned fee splits." *Compare* Complaint, ¶ 2, 8 *with McCarn* FAC, ¶ 1.

- Both suits allege that the plaintiffs were "harmed in that [] they were entitled to purchase settlement services from providers that did not participate in unlawful kickback and/or fee-splitting schemes." *Compare* Complaint, ¶ 172, *with McCarn* FAC, ¶ 173.

- Both suits seek identical relief. *Compare* Complaint at 61, A-F, *with McCarn* FAC at 50, A-F (seeking costs, fees and restitution).

- Just as herein, the *McCarn* plaintiff raised his claims years after the expiration of the one-year statute of limitations under RESPA, he alleged that equitable tolling should apply because he was unable to discover his claims without the assistance of counsel, and, for some unexplained reason, he did not obtain the assistance of counsel until years after the statute of limitations on his claims had expired. *Compare* Complaint, ¶¶ 127-132, 149, *with McCarn* FAC, ¶¶ 149-150.

On May 29, 2012, the *McCarn* court granted a motion to dismiss filed by certain defendants other than United Guaranty on the grounds that the plaintiff lacked Article III standing to sue those defendants who did not insure the plaintiff's home loan. *McCarn v. HSBC USA, Inc.*, 2012 WL 7018363 (E.D. Cal. May 29, 2012) ("*McCarn I*"). The *McCarn* plaintiff filed an amended complaint on July 30, 2012. *See* Exhibit A. On November 13, 2012, the court granted the defendants' subsequent round of motions to dismiss. *McCarn II*, 2012 WL 5499433. This time, the court dismissed the plaintiff's claims with prejudice against the non-insuring defendants. *Id.* at 3-4. The court also concluded that the plaintiff failed to allege timely claims against any defendant, and it therefore dismissed the plaintiff's claims against all remaining

defendants without prejudice, and gave the plaintiff 20 days to file an amended complaint "in an attempt to cure the deficiencies described herein." *Id.* at 10. On the twentieth day, the plaintiff voluntarily dismissed his complaint. *See McCarn*, Case No. 1:12-cv-00375, ECF No. 130 (December 3, 2012). One month later, Plaintiffs filed this case.

**Argument**

As discussed below, all Plaintiffs' RESPA claims are untimely on their face. Additionally, the Non-Insured Plaintiffs' RESPA claims fail for lack of Article III and statutory standing. Further, Plaintiffs' "Common-law Restitution/Unjust Enrichment" claims fail as to all Plaintiffs for the same reasons as their RESPA claims, and also are untimely on their own behalf. United Guaranty's motion to dismiss should therefore be granted in full.

## I.   PLAINTIFFS' RESPA CLAIMS ARE UNTIMELY

Plaintiffs' purported claims against United Guaranty for RESPA violations arise under 12 U.S.C. § 2607. The limitations period for a RESPA violation begins to run on "the date of the occurrence of the violation," *Morilus v. Countrywide Home Loans, Inc.*, 651 F. Supp. 2d 292, 306 (E.D. Pa. 2008), which, under RESPA, is the time of a loan closing. *See Kamara v. Columbia Home Loans, LLC*, 654 F. Supp. 2d 259, 265 (E.D. Pa. 2009) (plaintiff/borrower's claims untimely under RESPA because the limitations period "began to run on the date of the closing . . . [and] [t]he plaintiff did not bring her claim within one year of that date").

Thus, the statute of limitations for Plaintiffs' alleged RESPA claims began to run when Plaintiffs closed their loans on various dates between January 2006 and April 2008. *See* Complaint, ¶¶ 14-18. Because Plaintiffs did not file their RESPA claims against United Guaranty until January 4, 2013, their claims are untimely, and must be dismissed, unless the statute of limitations was tolled until January 4, 2012 – one year before they filed their complaint. As discussed below, Plaintiffs have failed to allege facts sufficient to support the tolling of the statute of limitations, and their RESPA claims are therefore time-barred.

## II.    PLAINTIFFS DO NOT ALLEGE FACTS SUFFICIENT TO SUPPORT EQUITABLE TOLLING OF THE STATUTE OF LIMITATIONS

To attempt to salvage the timeliness of their claims, Plaintiffs assert the doctrine of equitable tolling through fraudulent concealment. Specifically, they allege that the defendants "engaged in numerous affirmative acts and made false and/or misleading representations about the captive reinsurance arrangements to conceal the facts and circumstances giving rise to the claims." Complaint, ¶ 112.

Plaintiffs have failed to plead sufficient facts to support equitable tolling through fraudulent concealment. "To invoke equitable tolling through fraudulent concealment at the pleading stage, a plaintiff must allege particularized facts sufficient to suggest '(1) that the defendant actively misled the plaintiff; (2) which prevented the plaintiff from recognizing the validity of her claim within the limitations period; and (3) where the plaintiff's ignorance is not attributable to her lack of reasonable due diligence in attempting to uncover the relevant facts.'" *In re Processed Egg Prods. Antitrust Litig.*, 2012 WL 6645533, *2 (E.D. Pa. Dec. 20, 2012), quoting *Cetel v. Kirwan Fin. Grp., Inc.*, 460 F.3d 494, 509 (3d Cir. 2006). A plaintiff asserting fraudulent concealment must plead with "the particularity required by Federal Rule of Civil Procedure 9(b)." *Hansen v. Shearson/Am. Exp., Inc.*, 890 F. Supp. 416, n.6 (E.D. Pa. 1995). The "circumstances" required by Rule 9(b) are the "who, what, when, where, and how" of the fraudulent activity. *Inst'l Investors Grp. v. Avaya, Inc.*, 564 F.3d 242, 253 (3d Cir. 2009). Moreover, "[i]n cases involving multiple defendants, a plaintiff's complaint should inform each defendant of the nature of his alleged participation in the fraud and a complaint that lumps together numerous defendants does not provide sufficient notice of which defendants allegedly made the misrepresentations." *Kester v. Zimmer Holdings, Inc.*, 2010 WL 2696467, *14 (W.D. Pa. June 16, 2010) (quotations omitted). Here, Plaintiffs have failed to meet their burden of pleading particularized facts sufficient to satisfy any of the elements of fraudulent concealment.

### A.   Plaintiffs Fail To Plead Facts Showing That United Guaranty Actively Misled Them

Within the 39 paragraphs in their complaint that purport to discuss the factual basis for their fraudulent concealment defense to the statute of limitations (¶¶ 112-150), Plaintiffs fail to allege that United Guaranty did, or did not do, anything at all that could amount to "actively misleading" them during the limitations period. Indeed, four of the six plaintiffs indisputably had no relationship at all with United Guaranty, as their loans were not insured by United Guaranty. United Guaranty simply could not have "actively misled" any of these plaintiffs, and they do not allege that it did.

The only Plaintiff to allege any contact with United Guaranty is plaintiff Hunt. While plaintiff Hunt purports to have called United Guaranty to discuss whether his loan was reinsured, this did not occur until April 23, 2012 – more than five years after Mr. Hunt's claims accrued, and even after the time when he alleges he met with an attorney and discovered his claims. *See* Complaint, ¶¶ 16, 130. Accordingly, even if United Guaranty engaged in any fraudulent activity during this call (and it did not), it is entirely irrelevant, as it does not provide any excuse for Mr. Hunt's failure to have discovered his claims during the preceding five years, which is the period he seeks to have tolled. *See, e.g., I.V. Svs. of America, Inc. v. Inn Devp't & Mgmt., Inc.*, 182 F.3d 51, 56 (1st Cir. 1999) ("Acts of alleged concealment by [defendants] after the statute had run would not warrant equitable tolling."). In any case, Mr. Hunt does *not* allege that United Guaranty engaged in any affirmative act of fraudulent concealment. At most, he alleges that the United Guaranty representative with whom he spoke "did not know" whether his loan was part of a reinsurance arrangement. Complaint, ¶ 130. These allegations do not show that there was anything "fraudulent" or misleading about United Guaranty's alleged statements, but rather that the representative was simply unable to answer his questions relating to reinsurance. This is not actionable fraudulent concealment. *See Poskin v. TD Banknorth, N.A.*, 687 F. Supp. 2d 530, 551-52 (W.D. Pa. 2009) (declining to apply fraudulent concealment because the defendant's

alleged "failure to respond to plaintiffs' inquiries . . . cannot be considered an affirmative misrepresentation").

Additionally, even if the representative's statements were misleading, and they were not, Mr. Hunt promptly filed his lawsuit within a few months of his discussion with United Guaranty, making it clear that he was not "lulled into sitting on [his] right of redress," as required for fraudulent concealment to apply. *In re Community Bank of N. Virginia*, 467 F. Supp. 2d 466, 479 (W.D. Pa. 2006) (declining to apply equitable tolling based on fraudulent concealment where there "is no suggestion that any of the defendants actively misled any member of the class and thereby prevented the class member from recognizing the validity of his claim within the statutory time period"). Mr. Hunt's allegations concerning his conversation with United Guaranty therefore do not support fraudulent concealment.

The only other plaintiff to allege any relationship with United Guaranty is plaintiff Wiggins, who alleges that United Guaranty insured her home loan. Complaint, ¶ 18. Unlike plaintiff Hunt, plaintiff Wiggins does not allege that she had any contact with United Guaranty or that United Guaranty "concealed" any information from her. Moreover, Ms. Wiggins alleges that she met with her attorney and was "put on notice" of her claims in September 2011 – more than one year before she filed her complaint. Complaint, ¶ 132. Accordingly, even crediting her allegations that she had no notice of her claims until she met with an attorney in September 2011, her claims are nevertheless barred by the one-year statute of limitations under RESPA because she did not file her complaint within one year of that time.

Furthermore, even if Plaintiffs' allegations of fraudulent concealment committed by defendants other than United Guaranty could be attributed to United Guaranty, and they cannot be, *see Kester*, 2010 WL 2696467 at *14, Plaintiffs' allegations are insufficient to show that *any defendant* "actively misled" them. To allege fraudulent concealment, Plaintiffs must plead with particularity that defendants engaged in an "affirmative fraudulent act that perpetuates concealment" beyond mere "inaction or silence." *Poskin*, 687 F. Supp. 2d at 551. In contrast, "[s]ilence can constitute fraud only where there is an affirmative duty to disclose because of a

fiduciary relationship between the parties or a similar relationship of trust and confidence." *Mest v. Cabot Corp.*, 449 F.3d 502, 517 (3d Cir. 2006). Here, Plaintiffs do not allege (nor could they) that any defendant owed them a duty to disclose. However, despite peppering their complaint with conclusory references to alleged "affirmative" misrepresentations (*e.g.*, Complaint, ¶¶ 109, 110, 112, 113, 116, 137, 139, 142-144), the most Plaintiffs allege are *non-disclosures* of information in Plaintiffs' loan documents. *See, e.g.*:

- Complaint, ¶ 114 ("HSBC intentionally designed any disclosures it provided to its borrowers ***to conceal information*** that would put borrowers on notice of the actual [captive reinsurance] relationship[s] . . . .") (emphasis added);

- *Id.* ¶ 119 ("Borrowers such as Plaintiffs ***were not informed*** that the captive reinsurance arrangements were lawful only if they involved adequate assumption of risk by HSBC RE.") (emphasis in original);

- *Id.* ¶ 145 ("Plaintiffs ***were not informed and were not provided with*** amended or corrected disclosure forms. Similarly, Plaintiffs ***were not informed*** of the identity of their specific Private Mortgage Insurer, the pool from which one would be chosen or the identity of HSBC's affiliated 'reinsurer.'") (emphasis added);

- *Id.* ¶ 174 ("Defendants ***did not disclose*** the true nature of the reinsurance arrangements to Plaintiffs.") (emphases added).

Because there was no duty to disclose here, these alleged non-disclosures are not actionable. *See Mest*, 449 F.3d at 517. Nor can Plaintiffs allege fraudulent concealment simply by asserting that the defendants failed to correct inaccurate or incomplete disclosures. *In re Community Bank of N. Virginia*, 467 F. Supp. 2d at 479 (plaintiffs' contention that "defendants did not tell them the representations contained in the loan document were inaccurate . . . is insufficient to justify the application of equitable tolling to save the otherwise time barred damage claims").

Accordingly, as the *McCarn* court concluded recently when faced with the same allegations of fraudulent concealment, Plaintiffs have failed to allege with particularity that any defendant "actively misled" them, and they therefore fail to satisfy the first element of fraudulent concealment. *See McCarn II*, 2012 WL 5499433 at *7 (finding no fraudulent concealment of plaintiff's RESPA claim because plaintiff failed to "state with particularity" what "'conduct' the Defendants concealed from the regulators, what disclosures Defendants made that were incomplete or inaccurate, or how these defective disclosures prevented Plaintiff from obtaining information about his claim").

**B.    Plaintiffs Fail To Allege Facts Showing That United Guaranty Prevented Them From Recognizing Their Claims**

To satisfy the second element of fraudulent concealment, Plaintiffs "must . . . allege facts sufficient to demonstrate that they 'were not aware, nor should they have been aware, of the facts supporting their claim until a time within the limitations period measured backwards from when the plaintiffs filed their complaint.'" *In re Processed Egg Prods.*, 2012 WL 6645533 at *2, quoting *Forbes v. Eagleson*, 228 F.3d 471, 487 (3d Cir. 2000).

Here, not only do Plaintiffs fail to allege facts showing that they "should not have been aware of the facts supporting their claims" before January 4, 2013, but their own allegations compel the conclusion that they *should have been aware* of the facts supporting their claims since long before then. Specifically, to attempt to support their claims, Plaintiffs rely on news articles and legal and regulatory documents that have been publicly available since the *late 1990s. See, e.g.*, Complaint, Exs. 3 (March 23, 1998 article entitled *Using a Bank Captive Subsidiary to Reinsure Mortgage Insurance*); 4 (August 6, 1997 "HUD Letter" allegedly prepared to address "potential problem posed by lenders' captive reinsurers and RESPA's anti-kickback and improper fees provisions" (Complaint, ¶ 53)), and 17 (April 26, 2006 congressional testimony of HUD Deputy Assistant Secretary for Regulatory Affairs). Plaintiffs also rely heavily on two articles from the *American Banker* magazine published in *September 2011 –* more than one year before Plaintiffs asserted their claims. *See* Complaint, ¶ 12, Exs. 1, 2

11

(referred to by Plaintiffs as the "*Reinsurance Kickbacks*" and "*Mortgage Kickback Scheme*" articles).  Plaintiffs do not allege, and could not credibly allege, that the defendants "concealed" any of this public information from them.  And of course, Plaintiffs eventually *did* "discover" this information, because they rely on it now in their complaint.  Plaintiffs do not allege any facts showing how they finally discovered this information or why they could not have done so earlier than they allege they did.  Plaintiffs also do not, and could not, allege that this information was not sufficient to put them on notice "of the facts supporting their claims" – because this is the very same information on which they now attempt to rely to actually support their claims.

Plaintiffs' allegations likewise confirm that they have been on notice that their home loans may be insured, and reinsured, from the moment when they signed their loan documents years ago.  Indeed, Plaintiffs *admit* that a risk-sharing agreement between their lender and their mortgage insurers was disclosed *in their mortgages*.  *See* Complaint, ¶ 118.  These disclosures even explained that the practice is called "captive reinsurance."  Complaint, ¶ 123.  Accordingly, Plaintiffs' own allegations demonstrate that *all* the information Plaintiffs would have needed to become aware of their claims, and indeed all the information they now attempt to rely upon in their complaint – *i.e.*, disclosures from their lender that their home loans may be placed in "captive reinsurance" arrangements and public information describing the nature of "captive reinsurance" – has been readily available to Plaintiffs since long before January 4, 2012.  It therefore is not plausible to conclude that any "concealment" by the defendants "prevented" Plaintiffs from discovering their claims during the limitations period.

Finally, Plaintiffs' allegations that they could not have discovered their claims any earlier than they did are belied by their admissions that for many years before they allegedly discovered their claims, similarly-situated plaintiffs were "challenging *the same type of agreement or understanding as is alleged herein*."  Complaint, ¶ 103 (emphasis added) (citing prior RESPA case).  Indeed, Plaintiffs admit that other plaintiffs have been raising "similar" RESPA claims since at least *December 2006*.  *Id.*  These admissions confirm that "facts supporting [Plaintiffs'] claims" have not been hidden from them, but in fact have been readily available to similarly-

situated plaintiffs for years. Because Plaintiffs' own allegations confirm that they "*should have been aware*" of the facts supporting their claims years ago, Plaintiffs have failed to plead the second element of fraudulent concealment.

### C.      Plaintiffs Fail To Allege Facts Showing That They Exercised Reasonable Diligence Throughout The Limitations Period

Plaintiffs' fraudulent concealment allegations also fail because Plaintiffs do not allege that they used "reasonable diligence in uncovering the relevant facts that form the basis of a claim." *Poskin*, 687 F. Supp. 2d at 551; *see Forbes*, 228 F.3d at 486 (a plaintiff must plead that she took "reasonable measures to uncover the existence of injury"). The only conduct Plaintiffs allege purporting to amount to "diligence" is that they "fully and diligently participated in the loan process and reviewed the documents presented to [them]." Complaint, ¶ 145. Not only do Plaintiffs fail to explain what they did to "fully and diligently" participate in their loan transactions, but no matter what they did, it would be insufficient as a matter of law to support equitable tolling because their obligation was to use "due diligence in discovering their claim *throughout the time period in which they claim the statute of limitations should be tolled.*" *In re Processed Egg Prods.*, 2011 WL 5980001, *13 (emphasis added); *see also Wilson v. Kerestes*, 2012 WL 3626706, *7 (M.D. Pa. June 12, 2012) ("equitable tolling is permitted only if the party has exercised due diligence throughout the period it seeks to have tolled") (citing *Adderly v. Ferrier*, 2010 WL 2640596, *4 (W.D. Pa. June 2, 2010)). Accordingly, Plaintiffs' allegations that they signed their loan documents and then did nothing else for years are insufficient to support equitable tolling.

Plaintiffs' other attempts to allege diligence also fail. While they allege that the defendants "thwarted [their] attempts [] to discover the unlawful conduct" (Complaint, ¶ 143), they do not provide any indication of what those "attempts" were. The Court should reject these conclusory allegations that are not supported by any facts. Plaintiffs also discuss at length their alleged diligence at times "*after the discovery of their claims*" (*id.*), including each of their alleged calls to their respective lenders and insurers in the weeks before they filed their

complaint. *Id.* ¶¶ 128-132; *see also id.* ¶ 150 ("Once Plaintiffs did discover the possibility of their claims, each acted reasonably and pursued their claims in a timely manner by filing this action."). But any "diligence" Plaintiffs used *after* they discovered their claims is irrelevant to whether the statute of limitations should be tolled for several years *before* they discovered their claims, which is the period they seek to have tolled. *See, e.g., I.V. Svs. of America*, 182 F.3d at 56. Indeed, if anything, Plaintiffs' reliance on their alleged "diligence" at times after they discovered their claims shows that they failed to use due diligence before then, because they do not allege that they contacted their lenders at any time before they "discovered" their claims, and they do not allege any facts showing why they could not have done so.

Finally, Plaintiffs' allegation that they "could not have discovered[] that Defendants' conduct as alleged herein provided a possible basis for their claims absent the specialized knowledge and/or assistance of counsel" (Complaint, ¶ 149) does not excuse them of their diligence obligations. Indeed – as the *McCarn* court concluded when rejecting the exact same argument – "to follow [Plaintiffs'] line of reasoning, any plaintiff who requires the assistance of counsel to discover the existence of a claim, including plaintiffs who conduct virtually no diligence, would be automatically entitled to equitable tolling of the statute of limitations for an indefinite period of time until that plaintiff retains counsel." *McCarn II*, 2012 WL 5499433 at *6. This cannot be, and is not, the law. Moreover, Plaintiffs do not allege any facts explaining why they could not have contacted a lawyer years before they allege they actually did, or explain the circumstances that led them to finally contact a lawyer after so many years of allegedly having no basis at all to discover their claims.

In sum, Plaintiffs' allegations are insufficient to support any of the requirements of equitable tolling based on fraudulent concealment. Without tolling, Plaintiffs' claims are time-barred and should be dismissed.

III.   **THE NON-INSURED PLAINTIFFS LACK STANDING TO BRING THEIR RESPA CLAIMS AGAINST UNITED GUARANTY**

Even if the Court finds that Plaintiffs have alleged timely claims under RESPA, the claims raised by the Non-Insured Plaintiffs (Ba, the Chipps and Murano) fail against United Guaranty because these plaintiffs lack Article III and statutory standing under RESPA. Again, the *McCarn* court reached this same conclusion in successive orders granting the defendants' motions to dismiss, and the *McCarn* plaintiff did not appeal those rulings. *See McCarn I*, 2012 WL 7018363 at *4-7; *McCarn II*, 2012 WL 5499433 at *3-4.

A.   **The Non-Insured Plaintiffs Lack Article III Standing To Sue United Guaranty for RESPA Violations**

The Article III doctrine that "requires a litigant to have 'standing' to invoke the power of a federal court is perhaps the most important of" the "case-or-controversy doctrines [which] state fundamental limits on federal judicial power." *Allen v. Wright*, 468 U.S. 737, 750 (1984). A defendant may raise a facial challenge to the existence of Article III standing under Rule 12(b)(1), which provides for the dismissal of an action for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). A plaintiff's complaint should be dismissed under Rule 12(b)(1) when it fails to satisfy the "irreducible constitutional minimum of standing." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "[I]n order to have Article III standing, a plaintiff must adequately establish: (1) an injury in fact (*i.e.*, a 'concrete and particularized' invasion of a 'legally protected interest'); (2) causation (*i.e.*, a 'fairly traceable' connection between the alleged injury in fact and the alleged conduct of the defendant); and (3) redressability (*i.e.*, it is 'likely' and not 'merely speculative' that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit). *Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269, 273 (2008) (quoting *id.* at 560-61). "Plaintiffs, as the parties invoking the federal courts' jurisdiction, bear the burden of establishing their standing." *Common Cause of Pennsylvania v. Pennsylvania*, 558 F.3d 249, 257 (3d Cir. 2009).

Here, the Non-Insured Plaintiffs fail to establish Article III standing because they do not, and cannot, allege that United Guaranty caused them any injury.

**B.     The Non-Insured Plaintiffs Do Not Allege That United Guaranty Caused Them Any Direct Injury**

To establish the causation element of the constitutional standing requirement, a plaintiff must show that the defendant's challenged actions caused the plaintiff's injury. *See Lujan*, 504 U.S. at 560. The Non-Insured Plaintiffs allege that HSBC bought mortgage insurance on their respective loans from one of the mortgage insurer defendants *other than* United Guaranty (the "Defendant Mortgage Insurers") in "exchange" for the Defendant Mortgage Insurers' agreements to "cede" a portion of the insurance premiums paid by the Non-Insured Plaintiffs to the lenders' respective captive reinsurers, HSBC RE, through the Defendant Mortgage Insurers' purchase of mortgage reinsurance. Complaint, ¶¶ 1-13, 52. The Non-Insured Plaintiffs do not allege that United Guaranty insured any of their loans, "ceded" any of the premiums they paid for insurance to HSBC RE, or indeed had any other direct or indirect relationship with them or their mortgage insurance. Thus, even assuming the Non-Insured Plaintiffs were "injured" by the conduct they allege, nothing in their complaint establishes, or even suggests, a "causal connection between [their purported] injury and the conduct" of United Guaranty. *Lujan*, 504 U.S. at 560-561.

Accordingly, absent any allegations that their alleged injuries are "fairly traceable" to conduct of United Guaranty, the Non-Insured Plaintiffs have failed to establish Article III standing to raise their claims against United Guaranty. *See, e.g.*, *Lee v. Am. Nat. Ins. Co.*, 260 F.3d 997, 1002 (9th Cir. 2001) (plaintiff lacked standing to challenge defendant insurer's marketing conduct because "he did not buy any policy from [insurer] and so did not suffer any injury due to [insurer's] conduct").[3]

---

[3]    *See also, e.g.*, *Perez v. State Farm Mut. Auto. Ins. Co.*, 2011 WL 5833636, *2 (N.D. Cal. Nov. 15, 2011) (granting motion to dismiss because "Plaintiffs do not allege that they bought any insurance policies from any of the Moving Parties, [thus] Plaintiffs did not suffer any injury due to the conduct of the Moving Parties, which means that Plaintiffs lack Article III standing to bring a case against the Moving Parties"); *Hovenkotter v. Safeco Corp.*, 2009 WL 6698629, *4 (W.D. Wash. Aug. 3, 2009) (granting motion to dismiss for lack of standing because plaintiff "d[id] not link his injury with any action taken by either" non-insuring defendant); *Johnson v.*

**C.    The Non-Insured Plaintiffs' Conspiracy Allegations Are Insufficient To Confer Article III Standing Over United Guaranty**

Recognizing that they have no standing arising from United Guaranty's direct conduct, the Non-Insured Plaintiffs allege that United Guaranty was a passive participant in an alleged conspiracy that harmed them. *E.g.*, Complaint, ¶ 1. As the *McCarn* court concluded, in two separate orders (including one based on the plaintiff's first amended complaint, which represented the plaintiff's attempt to cure the deficiencies in his standing allegations), such conspiracy allegations are insufficient to confer standing over United Guaranty. *See McCarn I*, 2012 WL 7018363 at *4; *McCarn II*, 2012 WL 5499433 at *3.

To the extent the Non-Insured Plaintiffs attempt to allege a "hub and spoke" conspiracy, with HSBC as the "hub" and the mortgage insurer defendants as the "spokes," the Non-Insured Plaintiffs would need to demonstrate the "interdependence between the spokes" by showing "that their *combined efforts were required to insure the success of the venture*." *United States v. Kelly*, 2012 WL 425969, *6 (W.D. Pa. Feb. 9, 2012) (emphasis added) (citation omitted). "If the spokes did not depend on each other, aid each other, or share any interest in the others' success, merely having the 'same goal' is insufficient to establish interdependence." *Id.* Plaintiffs' complaint contains no allegations that the defendants' "combined efforts were required to insure the success" of the alleged conspiracy. To the contrary, Plaintiffs attached to their complaint an article published in *American Banker* that describes public efforts in 2003 by defendant MGIC to "cap at 25% the share of total premium revenue shared with banks' captive reinsurance units," which resulted in MGIC losing market share to its competitors, causing MGIC to "abandon" its "hard line." Complaint, Ex. 2 at 3. Far from establishing that the "conspiracy" would collapse if any mortgage insurer withdrew from it, this article shows that alleged conspirators *did*

---

*Geico Cas. Co.*, 673 F. Supp. 2d 244, 254 (D. Del. 2009) (granting motion to dismiss because "Plaintiffs' injuries are not traceable" to non-insuring defendants; rather, "Plaintiffs' alleged injuries are traceable to . . . the insurance companies which issued their policies"); *Aguilar v. Allstate Fire & Cas. Ins. Co.*, 2007 WL 734809, *5 (E.D. La. Mar. 6, 2007) ("The plaintiffs' concession that none of the named plaintiffs were insured by either Allstate Fire and Casualty or Allstate Property and Casualty is a concession that they lack standing to sue those defendants.").

"withdraw" at times, and that the only resulting harm was to the economic interests of the
withdrawing insurer, but not to the "conspiracy" itself.  Plaintiffs' allegations therefore belie the
conclusion that the alleged conspiracy was dependent upon the defendants' "combined efforts."
See McCarn II, 2012 WL 5499433 at *3 (dismissing RESPA claim against non-insuring
defendants based on lack of Article III standing because plaintiff failed to allege "that collective
action by the [Defendants] was necessary to maintain the scheme or that failure to act in concert
would be economically self-defeating").[4]  Indeed, Plaintiffs' allegations make it more plausible
that each individual mortgage insurer would "prefer that fewer of its competitors participate in
the scheme, as it would then enjoy that much more of the broker's steered business." In re Ins.
Brokerage Antitrust Lit., 618 F.3d 300, 332 (3d Cir. 2010).

Moreover, "[t]o be actionable, a hub-and-spoke conspiracy must have a 'rim' which
requires some kind of agreement or understanding between and among the spokes that the other
spokes would cooperate in the conspiracy." McCarn I, 2012 WL 7018363 at *4.  At most,
however, Plaintiffs' allegations show parallel market conduct, with each mortgage insurer
entering into separate "agreements" with various lenders, but not a coordinated scheme among
all defendants.  Indeed, Plaintiffs expressly allege that the "Private Mortgage Insurers" have
made "agreements with the other major lenders" as well.  Complaint, ¶ 93.  Thus, in their
attempt to allege a "hub-and-spoke" conspiracy, Plaintiffs allege multiple "rimless wheel

---

[4]  In McCarn, the plaintiff's complaint also cited to "an excerpt from [defendant]
Genworth's 10-K showing that Genworth suffered a 'significant reduction in business' from
lenders when it 'sought to exit or restructure a portion of [its] excess-of-loss risk sharing
arrangements,' and that Genworth 'reinstated or restructured some of these arrangements.'"
McCarn I, 2012 WL 5499433, at *3.  The McCarn court concluded that this information "shows,
at most, that an individual [mortgage insurer] pulling out of the arrangement would result in
economic harm to that individual [insurer].  It does not show or allow any reasonable inference
that individual [mortgage insurers] failing to participate in the scheme would result in the
unraveling of the scheme itself or harm to other [mortgage insurers]." Id.  In a likely response to
the McCarn court's ruling, Plaintiffs herein make no reference to this excerpt from the Genworth
10-K.  However, just as plaintiffs may not avoid the impact of unhelpful allegations asserted in a
prior complaint by omitting those allegations in an amended complaint, see Andrews v. Metro N.
Commuter R. Co., 882 F.2d 705, 707 (2d Cir. 1989) ("The amendment of a pleading does not
make it any the less an admission of the party."), the Court should consider these earlier
allegations in deciding this motion to dismiss. See Pension Ben. Guar. Corp. v. White Consol.
Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) (matters of public record may be considered
when deciding a motion to dismiss).

conspirac[ies] . . . in which various defendants enter into separate agreements with a common defendant, but where the defendants have no connection with one another, other than the common defendant's involvement in each transaction." *Dickson v. Microsoft Corp.*, 309 F.3d 193, 203 (4th Cir. 2002) (rejecting the "proposition that a rimless wheel conspiracy constitutes a single, general conspiracy," and emphasizing that "a wheel without a rim is not a single conspiracy"); *see In re Ins. Brokerage Antitrust Lit.*, 618 F.3d at 327 (plaintiff failed to plead "broker-centered" hub-and-spoke conspiracy "with the broker as the hub and its insurer-partners as the spokes" because "one cannot plausibly infer a horizontal agreement among a broker's insurer-partners from the mere fact that each insurer entered into a similar contingent commission agreement with the broker"). Without a "rim" that joins the "spokes" that was dependent upon United Guaranty's participation (in addition to that of all other private mortgage insurers), the Non-Insured Plaintiffs' conspiracy allegations are insufficient to provide them with Article III standing to raise their claims against United Guaranty.

**D.    The Non-Insured Plaintiffs' RESPA Claims Fail For Lack of Statutory Standing**

If the Court finds that the Non-Insured Plaintiffs have Article III standing, it should nevertheless dismiss their claims against United Guaranty under Rule 12(b)(6), because United Guaranty did not insure their loans and thus they lack statutory standing. *See Baldwin v. Univ. of Pittsburgh Med. Ctr.*, 636 F.3d 69, 73 (3d Cir. 2011) ("A dismissal for lack of statutory standing is effectively the same as a dismissal for failure to state a claim.").

Section 2607 of RESPA prohibits two types of activity, which can be described in the simplest terms as (a) kickbacks and (b) split charges. The prohibition against kickbacks states:

> No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person.

12 U.S.C. § 2607(a). The prohibition against split charges states:

> No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement

service in connection with a transaction involving a federally related mortgage
loan other than for services actually performed.

12 U.S.C. § 2607(b).

The Non-Insured Plaintiffs do not have standing to sue United Guaranty under Section 2607(a). Because United Guaranty did not insure their home loans, United Guaranty never provided *any* settlement service "involving" their mortgage loans. Nor could United Guaranty have reached an "agreement or understanding" with HSBC that any business involving their loans would be referred to United Guaranty or to anyone else. Thus, United Guaranty could not have "give[n]," nor could HSBC have "accept[ed]," any "fee, kickback, or thing of value" pursuant to such a non-existent agreement.

Similarly, the Non-Insured Plaintiffs do not have standing to sue United Guaranty under Section 2607(b). Because it did not insure their loans, United Guaranty never received any "charge" "in connection with a transaction" "involving" the Non-Insured Plaintiffs' loans. Hence, United Guaranty could not have "give[n]," nor could HSBC have "accept[ed]," a "portion, split, or percentage" of any such charge.

These conclusions are reinforced by Section 2607's remedial provision which states:

> Any person or persons who violate the prohibitions or limitations of this section
> shall be jointly and severally liable to the person or persons charged for *the
> settlement service involved in the violation* in an amount equal to three times the
> amount of any charge paid for such settlement service.

12 U.S.C. § 2607(d)(2) (emphasis added). On its face, this provision cannot give the Non-Insured Plaintiffs any right of recovery against United Guaranty because United Guaranty did not "charge" and was not "paid" for a "settlement service involved in the [alleged] violation" relating to their loans. Instead, Plaintiffs allege that United Guaranty "charged" for "settlement services involved in [alleged] violations" relating to *other* borrowers' loans. It makes no sense to construe Section 2607(d)(2) as entitling the Non-Insured Plaintiffs to recover "three times the amount" of mortgage insurance charged for *other* borrowers' loans. Yet that is the illogical result the Non-Insured Plaintiffs urge this Court to adopt. The Court should reject this untenable

construction of RESPA and conclude that the Non-Insured Plaintiffs do not have statutory standing to sue United Guaranty.

## IV.    PLAINTIFFS' UNJUST ENRICHMENT CLAIMS FAIL

Plaintiffs' second cause of action, captioned "Common-law Restitution/Unjust Enrichment," should also be dismissed with prejudice. Plaintiffs' unjust enrichment claims are entirely coextensive with their RESPA claims, and are therefore barred for the same reasons as discussed above. *See Grand Union Supermarkets of the Virgin Islands, Inc. v. Lockhart Realty Inc.*, 2012 WL 3328836, at *6 (3d Cir. Aug. 15, 2012) (plaintiffs' "unjust enrichment claim should have been dismissed on the same basis as the fraud claim" because "an unjust enrichment claim is essentially another way of stating a traditional tort claim"); *see also McCarn II*, 2012 WL 5499433 at *9 (dismissing the plaintiff's unjust enrichment claim as untimely after finding plaintiff's RESPA claim untimely).

Additionally, "the quasi-contractual doctrine of unjust enrichment is inapplicable when the relationship between the parties is founded on a written agreement or express contract." *Synesiou v. DesignToMarket, Inc.*, 2002 WL 501494, *4 (E.D. Pa. Apr. 3, 2002). Here, Plaintiffs have no quasi-contractual right to recovery because Plaintiffs' relationships with the defendants, to the extent they have any, are founded upon Plaintiffs' binding agreements with their lenders.

Further, even if Plaintiffs' unjust enrichment/restitution claims were otherwise viable as standalone causes of action, they are untimely because (i) they were raised outside the four-year limitations period that applies to unjust enrichment claims, 42 Pa.C.S.A. § 5525(4), and (ii) for the same reasons as discussed above, the limitations period was not tolled.

## V.    PLAINTIFFS SHOULD NOT BE GIVEN LEAVE TO AMEND

Plaintiffs should not be granted leave to amend their complaint. The deficiencies in their pleading are not subject to correction through amendment because no additional allegations can change the facts that (i) Plaintiffs' home-loan disclosures and other public information identified

in their complaint were sufficient to put Plaintiffs on "notice" of their claims years ago, and (ii) the Non-Insured Plaintiffs have no standing to sue defendants who did not insure their loans.

Moreover, Plaintiffs' counsel's conduct in their other RESPA cases confirms that Plaintiffs have no additional allegations to make that could cure the defects in their pleading. Plaintiffs' counsel have filed precisely the same complaint that Plaintiffs bring now at least ten times before, in addition to several amended complaints raised after the defendants had filed motions to dismiss. In each complaint, the plaintiffs allege that they did not discover their claims until some undisclosed time years after their claims accrued when they finally decided, for no stated reason, to finally obtain the "assistance of counsel." The only court to have addressed the sufficiency of those allegations (the *McCarn* court) concluded that they are *not* sufficient to support equitable tolling. *McCarn II*, 2012 WL 5499433 at *6. Plaintiffs' counsel's failure to even attempt to amend the plaintiff's complaint in *McCarn*, and their decision to re-file the case in this forum instead, raising the same "tolling" allegations, confirm that Plaintiffs herein, like the plaintiffs in all these other cases, have nothing further to allege to establish the timeliness of their claims or that they have standing to sue the non-insuring defendants. Rather, Plaintiffs' counsel are simply shopping for a court that will entertain their clients' time-barred and invalid claims. Accordingly, if the Court agrees that Plaintiffs have failed to allege timely and valid claims, then it should dismiss the complaint *with prejudice*, as Plaintiffs have nothing further to add to support their claims. A dismissal with prejudice would also promote judicial economy by ensuring that Plaintiffs' counsel do not continue their forum-shopping by attempting to bring the same case in yet another forum.[5]

---

[5]   Plaintiffs' forum-shopping is particularly egregious because it appears that certain Plaintiffs, including plaintiffs Hunt and Wiggins (the only two plaintiffs who allege that United Guaranty insured their loans), actually held back from participating in the *McCarn* case to await the outcome of the defendants' motions to dismiss, and then, once the outcome was not favorable, decided to join this lawsuit instead. Plaintiff Wiggins alleges that she met with her attorneys in September 2011, while plaintiff Hunt alleges she met with her attorneys in April 2012. Complaint ¶¶130, 132. Thus, both plaintiffs had met with their attorneys and were admittedly on notice of their claims in time to participate in *McCarn*, in which the amended complaint was not filed until August 30, 2012. Rather than join that suit, however, these plaintiffs sat on the fence until the case was dismissed, and then joined this copycat suit.

**Conclusion**

For the foregoing reasons, United Guaranty respectfully requests that the Court dismiss Plaintiffs' Complaint against it, with prejudice.

> BY: /s/ David E. Edwards
> David E. Edwards
> 1650 Market Street
> One Liberty Place, Suite 1800
> Philadelphia, PA 19103-7395
> (215) 864-7166
>
> *Of Counsel:*
>
> Michael B. Carlinsky (*pro hac vice* pending)
> Jane M. Byrne (*pro hac vice* pending)
> **Quinn Emanuel Urquhart & Sullivan, LLP**
> 51 Madison Avenue, 22nd Floor
> New York, New York 10010
>
> *Attorneys for United Guaranty Residential
> Insurance Company*

---

Plaintiffs' fence-sitting is all the more reason to dismiss this case with prejudice so that Plaintiffs' gamesmanship is not rewarded.

## <u>CERTIFICATE OF SERVICE</u>

I, David E. Edwards, hereby certify that on this 26th day of February 2013, the foregoing

Motion to Dismiss was served electronically on all counsel and is available for viewing and

downloading from the ECF system and a paper copy of Exhibit A is being sent via U.S. mail.

Dated:  February 26, 2013                    WHITE AND WILLIAMS LLP

                                 BY:  /s/ David E. Edwards
                                      David E. Edwards
                                      1650 Market Street
                                      1800 One Liberty Place
                                      Philadelphia, PA 19103
                                      (215) 864-7166

                                      *Of Counsel:*

                                      Michael B. Carlinsky (*pro hac vice* pending)
                                      Jane M. Byrne (*pro hac vice* pending)
                                      **Quinn Emanuel Urquhart & Sullivan, LLP**
                                      51 Madison Avenue, 22nd Floor
                                      New York, New York 10010

                                      *Attorneys for United Guaranty Residential*
                                      *Insurance Company*

# EXHIBIT A

**<u>EXHIBIT A</u>**

Being Filed in Paper Form